## Horace T. Love & Wife *v.* George A. Howard.

## Robert W. Waterman *v.* Same.

Where in a lease of a city lot for ninety-five years, — the rent to be appraised at the end of the first fifteen years, and every five years thereafter during the term, — the lessee covenanted, " that he would pay, or cause to be paid, all taxes and assessments that might, at any time during the term, be assessed upon said lot or its appurtenances," *it was held:* that the covenant did not extend to a city assessment upon the landlord for benefits derived to his reversion from the laying out of a new street contiguous to the lot, for which improvement the tenant, according to his interest, was also assessed; inasmuch, as the assessment was made under an act not in existence at the time of the execution of the lease, was novel and extraordinary in its *character,* and could not have been in the contemplation of the parties when the covenant was made.

These were actions of debt, brought by the plaintiffs, claiming as interested, jointly with others, in the reversion of the Howard Building estate in Westminster Street, Providence, against the defendant, as lessee of said estate, to recover of him under the covenants of his lease, certain assessments levied by the city of Providence, upon their interest in said estate, for the benefits by them received from the laying out and opening of Dorrance Street.

The declarations, in substance, set forth the lease of the premises to the defendant by Richard Waterman, of Coventry, under whom the plaintiffs claimed title, — the assessments made upon their reversionary interest in the premises for the laying out and opening of Dorrance Street, and their payment of the same.

To the declarations, seven pleas were filed, in each of the actions, by the defendant; upon two of which pleas, — *non est factum,* and that the demised premises were not assessed as alleged in the declaration, — issue was joined to the coventry, and to the other five of which the plaintiff demurred, generally.

As the judgment of the court upon these demurrers turned exclusively upon the sufficiency of the declarations, or rather, upon the obligation of the defendant to pay the assessments sought to be recovered by virtue of the covenants of his lease,

it will be unnecessary to state the pleas demurred to, or the points made upon them, or, in other respects, upon the declaration, by the counsel on either side.

The lease, which was by indenture, bore date January 1, 1847, and was for a term of ninety-five years, with stipulations for the appraisal of the rent at the end of the first fifteen years, and at the end of every five years thereafter, during its continuance. It contained a mutual covenant, which provided, " *that all taxes and assessments of every kind, that might at any time during the continuance of the lease be assessed upon said lot, or its appurtenances, should be paid by the lessee, his executors, administrators or assigns;* " and a further covenant by the lessee on his part, " *for himself, his heirs, executors and administrators, to and with the lessor, his heirs and assigns, that the lessee would pay or cause to be paid all taxes and assessments that might, at any time during said term, be assessed upon said lot or its appurtenances.*"

*T. A. Jenckes,* for the plaintiffs :

1st. The covenant in the lease is comprehensive in its terms, and cannot be limited so as to charge the owners of the reversion with any tax or assessment which may be assessed on the estate demised during the lessee's term. The questions which have arisen in England, upon the covenant to pay taxes contained in leases, have been the consequence of the want of such words in the covenant as would leave no doubt as to the intention of the parties. The complaint, in almost every instance, has been the obscurity of the language in which the covenant is expressed. Thus, in the case of *Hopwood* v. *Barefoot,* 11 Mod. 238, a covenant to pay parliamentary taxes was held to extend only to those *in esse* at the time of making the lease; but, as was remarked by *Powell,* J., had the words been " all taxes which may hereafter be assessed by parliament," all taxes whatsoever would have been included. The form suggested in 2 Platt on Leases, 170, is this : " All taxes, rates, assessments, and impositions whatsoever which now are, or at any time during the continuance of said term may be assessed or imposed," &c. ".By the adoption of this

or a similar comprehensive form," says the author, "most of the questions which have formerly arisen on the subject are now avoided." And see generally 2 Platt on Leases, ch. 10, § 3, and cases cited. The question as to the liability of the lessee in the cases at bar on the covenant is, of course, to be decided from the language of the covenant itself and from nothing else. That language is clear and explicit. It binds the lessee to pay "all taxes and assessments;" not those only which were assessed at the time the lease was made, but all which might "at *any time during said term*" be assessed upon said lot and its appurtenances. His liability is not limited to any particular class of taxes or assessments, but to all that might be assessed while he continued the lessee of the estate. A tenant bound himself by covenant in a lease to pay "all burdens and taxes." There was no tax upon the estate at the time of the execution of the lease, but parliament afterwards granted a fifteenth, and he was held liable for it under his covenant. Case in 33d year Hen. VIII., cited by *Holt*, C. J., in *Hopwood* v. *Barefoot*, 11 Mod. 240. Even in cases where there have been exceptions of certain taxes in the covenant, taxes of the same nature and apparently coming within the exception, have been held to be payable by the lessee. Thus a lessee covenanted to pay all rates, assessments, &c., both ordinary and extraordinary, which should, during the term, be rated, assessed, &c., upon the demised premises, *excepting the land tax*, which the landlord was by statute bound to pay, and in consequence of various new buildings erected by the lessee in pursuance of a covenant for that purpose, (it may be remarked that there is a similar covenant in the lease under consideration,) an additional land-tax was imposed; it was held that said additional land-tax should be paid by the lessee. *Hyde* v. *Hill*, 3 Term Rep. 377. Taking the covenant as it stands, the lessee is clearly liable for all taxes and assessments, of whatever kind, which may be imposed upon the demised estate during the continuance of the lease.

2d. Under the covenant contained in this lease, the lessee is liable to pay the assessment for laying out Dorrance Street.

The covenant binds him to pay *all taxes* and *assessments* which may, at any time during his term, be assessed upon the estate demised. This was assessed during the continuance of his term. He is, therefore, liable to pay this. A lease contained a covenant on the part of the lessee to pay all taxes and assessments which might be imposed on the premises or any part thereof by authority derived from the United States, the State of New York, or the corporation of the city of New York, and an improvement was made by the city of New York, in the opening of Lafayette Place, which took a part of the leasehold premises, and it was held, that the lessee was chargeable with the amount of the assessment upon the interest of the lessor in the premises. *Astor* v. *Miller*, 2 Paige, 69. This case is also cited in 2 Bac. Abr. tit. COVENANT, E. 3. The case cited determines those at bar. Those at bar are, indeed, stronger. In the one cited, the lessee bound himself to pay all taxes and assessments imposed by the authority of the United States, the State of New York, and the City of New York. But the lessee, in these cases, binds himself to pay " all taxes and assessments which may at any time during his term be assessed upon the estate demised to him; of course, binding himself to pay all which may be assessed by any legal authority. His covenant runs with the land demised, binding him and his assigns so long as he or they hold the premises under the lease. He cannot — particularly as the value of the buildings he has erected has been vastly increased by the laying out of Dorrance Street — avoid his liability to pay the amount imposed upon the estate by the city in making that improvement.

3d. The estate having been assessed in the name of the plaintiffs, and the amount having been paid by them after demand on the defendant and upon his refusal to pay, they are entitled to bring debt to recover the amount so paid with interest. 1 Saunders on Pl. & Er. 898 ; Com. Dig. tit. DEBT, A. 5 ; *Withers* v. *Moore*, 3 Barn. & Cress. 254. Covenant and debt are concurrent remedies for the recovery of any *money* demands where there is an express or implied contract in an

instrument under seal to pay it, but in general debt is the preferable remedy, &c. 1 Chit. on Pl. (5th ed.) 134.

4th. The plaintiffs in this action being tenants in common of the estate assessed, and having paid their proportional part of the assessment, are entitled to recover the amount so paid without joining the other cotenants. Platt on Covenants, 129; *Eccleston* v. *Clipsham,* 1 Saund. 153; *James* v. *Emery,* 8 Taunt. 245; Esp. N. P. 117; Bac. Abr. Joint Tenants, K.

*James Tillinghast,* (with whom was *Bradley,*) for the defendant:

1st. The declaration is bad. It appears, affirmatively, upon the face of the declaration, that there are other parties who ought to have been joined as plaintiffs; that the plaintiffs are not the sole owners or devisees of the estate on which the assessment was made, and this is fatal on demurrer. 1 Chit. Plead. 13; 1 Saund. Rep. 154, note (1), 291 (6); *Scott* v. *Godwin,* 1 Bos. & Pull. 67; *Schott* v. *Burton,* 13 Barb. 173, 183; *Calvert* v. *Bradley,* 16 How. U. S. Sup. Court, 580. The plaintiffs here and there, co-devisees claiming under the original lessor, are tenants in common of this land, and as such, by operation of law, are joint covenantees under the defendant's lease, and must join in actions upon its covenants. 1 Chit. Plead. 11, 12, and note 1; Coke Litt. § 316; 4 Dane Abr. 55, § 7; *Calvert* v. *Bradley,* 16 How. Sup. Ct. U. S. 580; *Bradburne* v. *Botfield,* 14 Mees. & Welsb. 558; *Scott* v. *Godwin,* 1 Bos. & Pul. 67; *Schott* v. *Burton,* 13 Barb. 173; *Merrill* v. *Berkshire,* 11 Pick. 269; *Gilmore* v. *Wilbur,* 12 Pick. 120; *Daniels* v. *Daniels,* 7 Mass. 135.

2d. The declaration shows no cause of action. It does not show that the provisions of the act under which this assessment is claimed to have been made were complied with, and so shows no legal assessment.

3d. This assessment is not embraced within the covenant here declared upon, as it is for a permanent improvement, is extraordinary in its nature, and could not have been in the contemplation of the parties, as there was then no statute in force authorizing such an assessment.

BRAYTON, J.  It is objected to this declaration, that it shows no cause of action in this, that although it sets forth the covenant made by the defendant, yet that the assessment alleged, and for non-payment of which the defendant is now sought to be charged, is not, upon a proper construction of the covenant, within its terms and intent; that, as it was for a permanent improvement of the estate, was extraordinary in its character, and not in use at the time the covenant was made, it could not have been in the contemplation of the parties.

The defendant's covenant is, that he will pay, or cause to be paid, at the time the same shall become due and payable, all rents accruing under this lease, and " *all taxes and assessments that may at any time during said term be assessed upon said lot or its appurtenances.*"

The question raised is not new to courts of law.  It has been frequently in times past mooted in the English courts, and become the subject of judicial decision; and some rules of decision have been announced in regard to it.

In *Davenant* v. *Bishop of Sarum*, 2 Levinz, 68, the lease was made in 1635, and contained a covenant to pay all taxes during the term.  In 1665, in the reign of Charles II., a tax was ordered by parliament — a kind of assessment — in which it was provided, that the tenant, who was first to pay the assessment, might deduct a portion from the rent payable by him.  It was unlike any which had been before ordered by parliament.  The question was, if the lessee under his covenant was bound to pay it to the relief of the lessor; and it was held, that he was not.  In that case, it was said by the court that this covenant cannot oblige him to pay the new tax; but it must be understood of such taxes as were then in use.  In *Hopwood* v. *Barefoot*, 11 Mod. 240, the covenant made in 1672 was this: that the lessee " shall pay all sum and sums of money that now is, or shall be assessed or taxed, for or in respect of the premises demised as aforesaid, for chimney money, church and poor, or visited houses, or *otherwise*, above and besides the rent reserved thereupon."  The lease was renewed in 1698 with the same covenant.  The question was, whether the land-tax was included in the covenant.  *Gould*, J., said: The words " or *other-*

*wise*" must mean something, and make it a charge on the tenant; and that the tax of royal aid (the tax in question) had been before the covenant. *Powell*, J., said: If a tax be given by parliament which was never *known before or in esse*, these words would not extend to these taxes; but if it had been, "all taxes which should be thereafter imposed by parliament," all taxes whatever, would be included; and adds, the first taxes were tenths and fifteenths, till eight of Edw. III., which were upon goods, and were uncertain until *subsidies* came in Elizabeth's reign, and in 1641 the land-tax. To all these the covenant will extend; but not to any of a *different nature*. Lord *Holt*, in this case, stated, that it had been adjudged, that when there was a covenant to discharge the lessee of all burdens and charges, and there being no tax at the time, a fifteenth was afterwards ordered by parliament, such tax was within the covenant, because the tax was always a charge *in viris;* and said, if this covenant had been before 1642, it had not bound the tenant because there had been no such tax before; and cited the case of *Brewster* v. *Kidgill*, 12 Mod. 166. This case arose out of a wager. The defendant affirmed that he had a right to deduct 4s. in the pound for parliamentary taxes. This he claimed against his covenant, which was this : "It is the true intent of these presents, that the grantee, his heirs and assigns, shall forever thereafter be paid the said rent charge without deduction or abatement of taxes, charges, or payments, out of, or concerning said rent, or the said manor, or land charged therewith." The question was, whether the grantor of the rent charge should be allowed to deduct the amount of tax imposed by parliament after the grant; and Lord *Holt* said, it had been a question, for a long time, whether such covenants extended to all future parliamentary taxes, "which I think would be very hard, and I cannot agree thereto in this large sense; but we are all of opinion that it extends to all *those sorts* of taxes that shall be given by future acts of parliament;" and concluded, by saying, "when this covenant was made, taxes of this nature had been used four or five years. This assessment was begun since the war in 1642. If this covenant had been in 1640 it would not reach this case."

In *Giles* v. *Hooper*, Carthew, 135, upon a covenant "to pay £80 rent, free and clear of all manner of taxes, charges, and impositions whatsoever," it was held, that the covenant included all land taxes whatsoever, although there was no land tax at the time; that having been ordered long after the making of the lease and covenant; and this, because the land tax was known and understood, and to be made as occasion required.

So, in *Bradbury* v. *Wright*, Doug. 624, on a similar covenant, viz., "to pay without any deduction, defalcation, or abatement, for or in any respect whatsoever;" it was held, on the authority of the preceding cases, that it extended to all land taxes.

The rule recognized and adopted in these cases is, that if the tax or assessment be made under a law existing at the time of the covenant, it is within it; or if there be no law existing at the time authorizing or requiring it, but it is afterwards enacted, still, if the assessment or tax be of the same kind with taxes or assessments made under former acts, it is presumed to have been in the contemplation of the parties, as a tax *in viris*, though not *in esse*. But if such tax or assessment be different in kind from such as have been theretofore *in esse*, it is not to be presumed that the parties contemplated any unusual exercise of power in the legislature, such as it had never before exercised. The land-tax act seems not to have been a continuing act; but these taxes were levied by act of parliament as the public exigencies from time to time required; but as they had been used, in the language of Lord Holt, they were not of a foreign nature, but known to the law, and had always a *virtual*, though not an *actual*, existence; and speaking of the covenant, he says: "It does not provide against an unusual accident, but against a thing well known to our law as part of the constitution."

In *Mayor, &c., of New York* v. *Cashman*, 10 John. 96, the covenant of the lessee was, that he would, "at his own proper cost and charge, bear, pay, and discharge all such duties, taxes, impositions, and payments, as shall, during the term hereby demised, be issued, grow due, and payable out of, and for the said demised premises." The assessment in this case was for opening a street in the city of New York, and was made under a

statute similar to the one under which the assessment was made in the case before us; and the question was, if the assessment was within the covenant? In giving the judgment in that case, the cases in 11th and 12th of Modern are referred to, as those by which the question was to be determined; and the court say: " The assessment was made in pursuance of a statute in force at the time when the covenant was made, and which, we must presume, was in the contemplation of the parties."

There are one or two cases cited by the plaintiff's counsel, apparently for the purpose of showing that the rule of these cases has been shaken or reversed. They are cases in which questions between landlord and tenant under the land-tax act have arisen. The case of *Hyde* v. *Hill*, 3 T. R. 377, is one. The covenant in this case was, that the tenant should pay " all, and all manner of rates, payments, assessments, and impositions, both ordinary and extraordinary, whatsoever, &c., *the land tax only excepted;*" and the lessee covenanted to lay out £400 in building on the premises four houses. Prior to the lease, the tax annually was £3 8*s.*; after the new houses were built, they were assessed, in addition, for £5 12*s.* The lessee paid the increased tax; and the question was, whether he had the right to deduct it from the rent; or, in other words, whether the lessor was bound to pay. The court held, that the land tax excepted was the tax which the *landlord was before* bound to pay; and to see what that was, that they must look to the act which directed the tenant to pay first, and then deduct so much as the landlord ought to pay. It is evident, that this case is entirely foreign from the question in the preceding cases. There was no question, whether the assessment was, in its kind, different from any existing or known at the time of the covenant. Confessedly it was the same in kind — known and understood — in use at the time. The question there was, whether an assessment upon an increased valuation was excepted, or merely the tax upon the valuation as it was at the time of the covenant.

In *Astor* v. *Miller*, 2 Paige, Ch. 68, the covenant was " to pay and discharge all such taxes and assessments as might be im-

posed or rated on the premises, or any part thereof, by author-ity derived from the people of the State of New York, or of the United States, or from the corporation of the city of New York." No question was made upon this covenant, as to whether it did or did not extend to new taxes of a different kind, or whether the tax was, or was not, new in its nature.

In the light of these cases, then, we are to inquire, whether the assessment in this case was of the same kind and nature with any assessment before known or in use in this state. It had not any actual existence at the time of the covenant. The act under which it was made was passed at the January session, 1854, six years after the making of the lease. It was not necessary that its existence should have been at that time *actual*, if in the language of Lord Holt it had a *virtual* existence ; or, in other language of his, it were one " *in viris* " ; such as the legislative power had before ordered or authorized, and which it might be foreseen and anticipated that they might again authorize; for in such case, parties covenanting against taxes and assessments would not be providing against unusual accidents, but against things well known and understood. The assessment here was made under the provision of an act for laying out, enlarging, straightening, and otherwise altering, streets in the city of Providence. The act provides, that in making such improvements there shall be an assessment upon the lands benefited by it, both upon the leasehold interest and upon the reversion, of a portion of the damages caused by such improvement. This is to be assessed and apportioned to the several estates benefited, in proportion to the benefit to each, respectively ; *i. e.* in proportion to its increased value. It is to be apportioned, also, in case of estates under lease, to the *leasehold* and to the *reversion*, respectively. The assessment here is for the permanent increased value to the state, to the landlord and tenant, respectively; continuing and remaining, as to the landlord, after the expiration of the term.

In looking back to past legislation, we look in vain for any taxes or assessments made upon any such principle, for any similar purpose. In laying, widening, or altering highways, theretofore, the expenses and damages caused thereby were paid by

the towns in which the highways were, and levied in the ordinary taxes for town expenses upon the estates of those liable to taxation, in proportion to the appraised value of their taxable property. But in no case, either for highways or other public improvements, have lands been taxed for the value added thereto by the public improvement. This is certainly a departure from any known mode or purpose of assessments. So novel and extraordinary did the provisions of this act appear when it went into effect, that it was seriously and earnestly denied to be within the constitutional power of the legislature to enact it; and because of its novel and extraordinary nature. The fact that its operation is confined to the city of Providence, and does not extend to the state generally, shows, that it is extraordinary in its kind, and required only by the high necessities of a growing city.

This kind of assessment being newly authorized, — differing in kind from any theretofore existing, — within the rule established and recognized by the preceding cases, is not within the defendant's covenant; but is such as, upon the authority of those cases, could not have been foreseen by the parties at the time, or have been in their contemplation.

But, independently of the cases referred to, must we not come to the same conclusion? There are no words in this covenant pointing to any extraordinary contingency; and in agreeing " to pay all taxes and assessments that may at any time during the term be assessed " upon the estate, while the estate was liable to be taxed and assessed in various ways by state and city, while there were taxes *in esse* and taxes not *in esse* but *in viris*, — taxes which might be laid, because such had been before laid, though not then in existence, it is sufficient to presume, that the parties contemplated, that such as were thus known would be, or might be, levied. It may be fairly presumed, that had it been contemplated by the parties, that at some future time during the lease, the owners of the reversion were to be assessed for, and be liable to pay for value added to their sole interest, — and that, too, a permanently added value, which would enure to, continue, and be enjoyed by them alone beyond the term, — some other provisions would have been

made than are here contained. It can hardly be presumed, that the tenant would be willing to pay such assessments without some provision for their deduction at the expiration of the term when the estate passed from him to the landlord, — and still less could we presume this in view of the provision in the lease for renewals, that the rate of rent is to be at periods of five years, newly fixed and determined by referees, according to the then rentable value of the estate. It cannot be presumed, that the tenant would agree, or the lessor claim, that the lessee should be first charged with the cost of the improvement, and then charged with rent for it. Yet such would be the effect of the covenant, if the force be given to it which is now claimed.

We are of opinion that this assessment was not within the defendant's covenant; and, therefore, that the declaration sets forth no cause of action. The conclusion to which we have arrived upon this point renders it unnecessary to consider the other questions which have been raised and argued by the counsel.

Judgment must therefore, upon the demurrers, be rendered for the defendant.